UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JESSICA HOWELL-GONZALEZ,

    Plaintiff,

v.

THE CITY OF MOUNT DORA,
FLORIDA,

    Defendant.
_____/

CASE NO.:

JURY TRIAL DEMANDED

## VERIFIED COMPLAINT

Jessica Howell-Gonzalez ("Howell"), by and through her undersigned counsel, hereby files this Verified Complaint against The City of Mount Dora, Florida ("The City") for violation of her rights under Florida's Public Sector Whistleblower's Act, §§ 112.3187-112.31895, Fla. Stat. (2018) (the "FWA"), for violation of the Family Medical Leave Act ("FMLA"), and unlawful retaliation under the First Amendment of the U.S. Constitution, pursuant to 42 U.S.C. § 1983 (the "First Amendment"), and in support states as follows:

### NATURE OF ACTION

1. This is an action arising from and seeking redress for The City's violations of:

    a. the FWA;

    b. FMLA; and

    c. the First Amendment.

### JURISDICTION AND VENUE

2. This Court has jurisdiction because this action involves a claim for damages and reasonable attorneys' fees and costs under a federal statute, FMLA.

3. This Court possesses federal question jurisdiction over the claims asserted by Plaintiffs pursuant to 28 U.S.C. § 1331 because they arise under the First Amendment, enforced through 42 U.S.C. § 1983.

4. This Court has supplemental jurisdiction over Howell's FWA claim under 28 U.S.C. § 1367(a) as these claims are so related to claims in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

5. Venue is proper under 28 U.S.C. § 1391(b)(2) because the events giving rise to Howell's claims occurred in the Middle District of Florida.

## PARTIES

6. Howell is a resident of Eustis, Lake County, Florida, and formally a corporal with The City's police department ("MDPD").

7. At all material times herein, Howell was an "employee" of The City as defined by Section 112.3187(3)(b) of the FWA and 42 U.S.C. § 2000e(f).

8. MDPD's principal place of business is at 1300 N. Donnelly Street, Mt. Dora, Lake County, Florida 32757.

## PROCEDURAL REQUIREMENTS

9. Employees protected under the FWA include those who disclose information on their own initiative in a written and signed complaint, those who refuse to participate in any adverse action prohibited by the FWA, or those who file "any written complaint to their supervisory officials." Section 112.3187(7), Fla. Stat. (2019).

10. On August 27, 2019, Howell provided her written, signed complaint to The City.

11. Howell has satisfied all of the administrative procedures that were conditions precedent to filing her FWA claims.

## FACTUAL BACKGROUND

12. Howell was a corporal with MDPD until her constructive discharge on October 17, 2019.

### FWA

13. For several months, Howell complained about a co-worker and subordinate, Officer Ivy Severance ("Severance"), as a result of her failing to work and conducting personal business on the clock.

14. This activity by Severance began in February 2019.

15. One specific instance was in mid-March where she took a civilian friend shopping and to run errands in her patrol vehicle on MDPD time while she was supposed to be taking an employee, Ashley Butler, out for uniforms.

16. A fellow co-worker, Deja Pollidore ("Pollidore"), complained about this event as well.

17. Howell made numerous complaints to Sgt K. Taylor regarding these chronic issues, who always advised her that he was told to leave Ofc. Severance alone at the instruction of then-Deputy Chief Robert Bell, who later became the MDPD police chief.

18. On April 4, 2019, Howell discussed the issues with Severance to Lt. Ken Hinman ("Hinman").

19. On April 10 and April 12, 2019, Howell again met with Hinman and complained about Severance incurring overtime (OT) she did not work and that she continued to perform personal errands and activities on MDPD time.

20. Howell raised these issues once more on April 15th to Hinman when an OT issue again arose after Severance told Howell she had no work and then "worked" OT hours from home.

21. Despite the complaints and objections of Howell, this activity continued.

22. In retaliation for Howell's complaints and objections, she was transferred from her unit the week following her April 15th objection.

23. On June 20, 2019, Howell met with Bell, who at this time was the acting chief, and again raised the significant issues regarding Severance using company time to perform personal errands and incurring overtime for which she was not entitled.

24. In response, Bell became aggressive and moved close to Howell and falsely told her that Severance spends more time at MDPD than anyone, and that he takes his daughter to school while at work and asked Howell if she was also accusing him of stealing time.

25. In the same conversation, Bell also made it clear that because of Howell's objections regarding Severance's theft of time, Howell would never be back in the community relations unit.

26. Howell was the acting sergeant of the unit when she made her initial complaints, including her complaint to Hinman.

27. Howell was a corporal in the unit when she made her complaints to Sgt. Taylor.

28. Based on Bell's demeanor and aggressive stance during their meeting, Howell felt intimidated and removed herself to avoid further attempts by Bell to intimidate and silence her.

29. Howell believed that her complaints related to activity that was detrimental to the taxpayers of Lake County.

30. Howell, by making her complaint, had hoped these activities would cease but it only became worse.

31. In fact, Severance has made a list of "villains" for which Howell was included as "Lady Tremaine," a reference to Cinderella's evil step-mom.

32. Severance took a photograph of this list, which Howell obtained.

33. On August 27, 2019, Howell submitted her written complaint regarding these issues to City Manager Robin Hayes, Human Resources Director Sharon Kraynik and Bell.

34. In her written complaint, Howell explained that she was treated unfairly at work as a result of her objections and refusal to engage in these improper activities.

35. Howell asked that this activity cease immediately and that her concerns be immediately investigated.

36. Instead, in retaliation for her complaints concerning acts or suspected acts of gross mismanagement and gross neglect of duty, as well as violations or suspected violations of laws, MDPD callously did nothing and ignored requests made by Howell to conduct an investigation into her complaints.

37. Inexplicably, Howell was instead told that the IA investigation into Severance must first be completed.

38. To that end, Howell was interviewed on Thursday, October 3, 2019.

39. During the interview, Howell identified Pollidore as a witness.

40. On Monday, October 7, 2019, Pollidore received correspondence that was mailed anonymously, along with statements from Krystal Beasley, Karen Campbell, Jeff Biles and Victor Uvalle.

41. The correspondence was devoted entirely to Severance's interests, which is telling and provides significant guidance regarding the identity of its author.

42. The correspondence threatens Pollidore with a civil lawsuit for "defamation of character" and cautions her to "do the right thing."

43. It was clearly a threat and intended to dissuade Pollidore from providing information in the IA investigation.

44. Howell reported this serious issue to the investigator.

45. However, tellingly, nobody followed up with either Howell or Pollidore regarding this serious issue.

46. Similarly, Captain Coy Hunter ("Hunter") solicited Sgt. Karen Dancel ("Dancel") to make a baseless complaint against Howell, to which she refused.

47. As a result, Severance became upset regarding Dancel's refusal.

48. After Dancel refused to lodge a complaint at Hunter's request, she alerted Howell.

49. A few days later, Hunter again asked Dancel if she had a complaint to file against Howell, and Dancel again told him no.

50. Thereafter, Howell asked Hunter why he would solicit Dancel to file a complaint against her.

51. Hunter responded that it was "at the direction of Chief Bell."

52. In turn, Howell called Bell regarding this serious issue.

53. Bell claimed to not have any knowledge of Hunter's actions.

## FMLA

54. In July 2019, Howell went on FMLA due to significant work stress.

55. During her time off, Bell repeatedly and falsely told staff that Howell was "abusing sick time."

56. Incredibly, she was penalized in her most recent evaluation for taking FMLA time.

57. For example, after receiving lower than usual points for "Dependability," the following comment was made, "During this evaluation period, Jessica used all of her available sick time and went without pay for several weeks."

58. This is clear interference and retaliation under the FMLA.

59. Following her return to work from FMLA leave, Howell was to change to nightshift.

60. This would have meant that her exposure to Bell and Severance would have been minimal.

61. Instead, and in retaliation for taking FMLA leave, she was told right before she was to return that she would be back on dayshift, which has meant daily interactions with the individuals who are the subject of her FWA complaints.

## TERMINATION

62. In light of the foregoing, it is apparent that MDPD created an entirely untenable situation in which no reasonable person would continue an employment relationship.

63. Therefore, as of October 17, 2019, Howell was constructively discharged from her employment with MDPD.

## COUNT I:
## FLORIDA PUBLIC SECTOR WHISTLEBLOWER ACT

64. Howell incorporates by reference paragraphs 1(a), 2, 4-53, 62 and 63 of this Verified Complaint.

65. Howell disclosed information in her written, signed complaint to MDPD and The City on August 27, 2019, as well as verbally beginning in February 2019 and through her constructive discharge.

66. The information disclosed amounted to violations or suspected violations of state and local law, rule, or regulation committed by MDPD and The City, which created and presented a substantial and specific danger to the public's health, safety, and welfare.

67. Additionally, Howell disclosed information in her written, signed complaint to MDPD and The City regarding acts or suspected acts of gross mismanagement, malfeasance, misfeasance, and gross neglect of duty committed by MDPD and The City.

68. Howell suffered retaliatory actions because of the information disclosed by her through her written, signed complaint, as well as through her verbal complaints.

69. As a direct and proximate result of her protected activity, Howell was subjected to retaliatory personnel action by MDPD and The City.

70. MDPD's and The City's actions have created an entirely untenable situation in which no reasonable person would continue an employment relationship.

71. Howell was constructively discharged from her employment with MDPD and The City on October 17, 2019.

72. As a direct and proximate result of MDPD's and The City's actions, Howell suffered a loss of employment and related economic and emotional injuries.

73. The actions of MDPD and The City make reinstatement ineffective as a make-whole remedy, entitling Howell to front pay in lieu of reinstatement.

WHEREFORE, Howell demands judgment against The City for:

    a. Compensation for lost wages, benefits, and other remuneration;

    b. Front pay in lieu of reinstatement;

    c. Compensatory damages;

    d. Injunctive relief;

    e. Attorney's fees and costs pursuant to §§ 112.3187-112.31895, Fla. Stat. (2018);

    f. Prejudgment interest; and

    g. Such other relief as this Court deems just and proper.

**COUNT II: RETALIATION**
**(FIRST AMENDMENT OF U.S. CONSTITUTION PURSUANT TO 42 U.S.C. § 1983)**
**(In the alternative to Count I)**

74. Howell incorporates by reference paragraphs 1(b), 2, 5-8, 12, and 54-63 of this Verified Complaint.

75. Howell brings this cause of action in the alternative to Count I, pursuant to 42 U.S.C. § 1983.

76. The conduct of MDPD and The City complained of herein was taken under color of the laws of the State of Florida.

77. The persons who engaged in the conduct at issue were of such position and authority so that their acts may fairly be said to constitute the official expressions of MDPD and The City' custom, policy or usage.

78. Howell engaged in constitutionally protected conduct by making statements relating to matters of public interest.

79. Howell's statements relating to matters of public interest were made in her capacity as a private citizen and were beyond the scope of her job duties and responsibilities as a public employee for MDPD and The City.

80. Howell's statements involved matters of public concern that outweighed the interests of the MDPD and The City as an employer, as the public has a substantial interest in eliminating fraudulent practices that cause taxpayer funds to be misappropriated.

81. Howell's statements were the type traditionally covered under the First Amendment.

82. The adverse employment actions suffered by Howell were causally related to, and in retaliation for, Howell having engaged in constitutionally protected conduct by making statements relating to matters of public interest.

83. MDPD and The City' retaliatory conduct deprived Howell of her constitutionally-protected rights of free speech under the First Amendment.

84. No legitimate governmental interest was served in denying Howell her right to free speech.

85. As a direct, proximate, and foreseeable result of MDPD and The City' retaliatory actions, Howell has suffered past and future losses, emotional pain, suffering, embarrassment, humiliation, inconvenience, mental anguish, loss of enjoyment of life, loss of dignity, emotional distress and other non-pecuniary losses and intangible injuries.

86. The actions of MDPD and The City make reinstatement ineffective as a make whole remedy, entitling Howell to front pay in lieu of reinstatement.

87. Howell has retained counsel to represent her in this matter and has incurred, and will continue to incur, attorney's fees and costs.

WHEREFORE, Howell demands judgment against The City for:

    a. Back pay;

    b. Front pay;

    c. Compensatory damages;

    d. Punitive damages;

    e. Attorneys' fees and costs of this action pursuant to 42 U.S.C. § 1988(b); and

    f. Such other relief as this Court deems just and proper.

## COUNT III: FMLA RETALIATION

88. Howell incorporates by reference paragraphs 1(c), 3, 5-8, 12-53, 62, and 63 of this Verified Complaint.

89. Howell met all of the eligibility requirements to qualify for up to twelve (12) weeks of unpaid, job-protected, leave per year for qualifying reasons.

90. Howell was entitled to FMLA leave.

91. Howell engaged in statutorily protected activity by applying for and taking leave under the FMLA.

92. Thereafter, Howell suffered adverse employment decisions because she took leave

93. These adverse decisions were made as a direct result of, and in retaliation for, Howell exercising her rights under the FMLA.

94. MDPD and The City did not act in good faith, nor did it have any reasonable grounds for believing that its actions were in compliance with the FMLA.

95. Moreover, MDPD and The City' proffered reason for engaging in the foregoing acts was merely pretext for its unlawful retaliatory actions against Howell for availing herself of the rights afforded to her under the FMLA.

96. As a result of MDPD and The City' retaliatory conduct, Howell suffered lost compensation, including the loss of wages and benefits.

97. Howell has and will continue to incur attorneys' fees and costs in this action, and is entitled to recovery of her attorneys' fees and costs pursuant to the FMLA. 29 C.F.R. § 825.400(c).

WHEREFORE, Howell demands judgment against The City for:

a. Lost wages and benefits;

b. Liquidated damages;

c. Injunctive relief;

d. Attorney's fees and costs;

e. Prejudgment interest; and

f. Any other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Howell hereby demands a trial by jury on all issues and counts triable of right before a jury.

Date: March 31, 2020.

Respectfully submitted,

s/ Christopher A. Pace
Jill S. Schwartz, Esquire
Florida Bar No. 523021
Christopher A. Pace, Esquire
Florida Bar No. 676721
JILL S. SCHWARTZ & ASSOCIATES, P.A.
655 W. Morse Blvd., Suite 212
Winter Park, Florida 32789
Telephone: (407) 647-8911
Facsimile: (407) 628-4994
E-mail: jschwartz@schwartzlawfirm.net
E-mail: cpace@schwartzlawfirm.net

Attorneys for Plaintiff

## VERIFICATION

Personally appeared before the undersigned, JESSICA HOWELL-GONZALEZ, who being first duly sworn, deposes and says that the allegations of this Verified Complaint and Demand for Jury Trial, are true and correct to the best of her knowledge, information and belief.

_J. Howell-G_
JESSICA HOWELL-GONZALEZ

STATE OF FLORIDA )
COUNTY OF ORANGE )

The foregoing instrument was acknowledged before me this 31st day of March 2020, by JESSICA HOWELL-GONZALEZ, who is personally known to me or who has produced _FL Drivers License_ as identification, and who did take an oath.

_Amy L Cook_
Notary Public – State of Florida at Large
My Commission Expires: _8/22/23_

AMY L. COOK
MY COMMISSION # GG 326959
EXPIRES: August 22, 2023
Bonded Thru Notary Public Underwriters